IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00366-STV

ACTIVE ATHLETICS, LLC,

    Plaintiff,

v.

ACTIVE GYMNASTICS CENTER, LLC,

    Defendant.
_____

# ORDER
_____

Entered by Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendant Active Gymnastics Center, LLC's Motion to Dismiss (the "Motion"). [#18] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##16-17] This Court has carefully considered the Motion, related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist the disposition of the Motion. For the following reasons, the Court concludes that it lacks personal jurisdiction over the Defendant. Nonetheless, the Court **DENIES** the Motion to the extent it seeks to dismiss the case and, instead, exercising its discretion, **TRANSFERS** the matter to the United States District Court for the Northern District of Texas.

I.  **FACTUAL BACKGROUND**[1]

Plaintiff Active Athletics, LLC is a Colorado limited liability company operating a gymnastics facility in Littleton, Colorado. [#1 at ¶ 3] Plaintiff offers a variety of services, including gymnastics instruction, competitive training, and regional/national competition opportunities, under the trademarks ACTIVE ATHLETICS (USPTO Registration No. 4295050) and ACTIVE GYMNASTICS (pending USPTO Application No. 98294863). [*Id*. at ¶¶ 1, 8] Plaintiff uses the ACTIVE GYMNASTICS Mark for the same goods and services as the ACTIVE ATHLETICS Mark. [*Id.* at ¶ 12] Plaintiff alleges that these trademarks have become distinctive in the gymnastics industry through extensive use and promotion since 2012, with the ACTIVE ATHLETICS Mark achieving incontestable status in 2018. [*Id.* at ¶¶ 11-13] Plaintiff asserts one or both Marks are famous as defined in 15 U.S.C. Section 1125(c)(2). [*Id.* at ¶ 13]

Defendant Active Gymnastics Center, LLC ("AGC") is a Texas limited liability company. [*Id.* at ¶ 4] Plaintiff asserts that Defendant uses the unregistered mark "ACTIVE GYMNASTICS CENTER" on its website and other marketing materials to "identify its gymnastic facility and recreational and competitive tumbling and gymnastics classes for all ages." [*Id.* at ¶¶ 15-16] Plaintiff alleges that Defendant's conduct has caused confusion among consumers and diluted Plaintiff's trademarks, resulting in harm to Plaintiff's reputation and business in Colorado. [*Id.* at ¶¶ 18, 21, 27] Despite Plaintiff's cessation demand, Defendant continues advertising, marketing, and selling

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint (the "Complaint") [#1], which the Court accepts as true to the extent they are uncontroverted by Defendant's affidavits. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

services through an infringing website while using the infringing Mark in the same industry and channels of trade as Plaintiff.  [*Id*. at ¶ 19]

Plaintiff filed its Complaint against Defendant on February 6, 2024, asserting: 1) federal trademark infringement under 15 U.S.C. §§ 1114, 1125 [*id.* at ¶¶ 22-39]; and 2) false designation of origin, false advertising, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a) [*id.* at ¶¶ 40-51].  The Complaint seeks damages, injunctive relief, and attorney's fees.  [*Id.* at 10-11]  On March 28, 2024, Defendant filed the instant Motion which seeks to dismiss the Complaint for lack of personal jurisdiction.  [#18]  Plaintiff has responded to the Motion [#24] and Defendant has replied [#25].

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss alleged claims against them for lack of personal jurisdiction. "Where the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).  "Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  *Id.* at 1056-57.  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  The Court also accepts the well-pleaded facts in the complaint "as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503,

3

1505 (10th Cir. 1995). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (quotation omitted). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quotation omitted).

III. **ANALYSIS**

In its Motion, Defendant raises three arguments to support its assertion that the Court lacks personal jurisdiction over it: (1) the Court lacks general personal jurisdiction over the Defendant because its place of incorporation and principal place of business is in the state of Texas; (2) the Court lacks specific personal jurisdiction over the Defendant because it lacks minimum contacts with the state of Colorado; and (3) the exercise of specific personal jurisdiction over Defendant offends traditional notions of fair place and substantial justice. [#18 at 3-10] The Court concludes that it lacks either general or specific personal jurisdiction over Defendant, and thus does not address Defendant's final argument. Nonetheless, the Court concludes that the interests of justice support transfer as opposed to dismissal.

A. **Personal Jurisdiction**

In determining whether a federal court has personal jurisdiction over a nonresident defendant in a federal question case, the court must determine first, "whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant," and second, "whether the exercise of jurisdiction comports

4

with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotations omitted).  Here, the federal statutes at question, 15 U.S.C. §§ 1114 and 1125, do not authorize nationwide service of process.  Thus, under Federal Rule of Civil Procedure 4(k)(1)(A), the laws of the forum state, Colorado, dictate personal jurisdiction.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (Federal Rule of Civil Procedure 4(k)(1)(A) "commands the district court . . . to apply the law of the state in which the district court sits.").

"A plaintiff seeking to invoke a Colorado court's jurisdiction over a non-resident defendant must comply with the requirements of [Colorado's] long-arm statute and constitutional due process."  *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1074-75 (D. Colo. 2012) (quoting *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)). Because "Colorado's long-arm statute . . . confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070.

"Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  "Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Id*. "If a defendant is subject to specific personal jurisdiction, the asserted cause(s) of action must arise from

the specific contacts with the forum that gave rise to jurisdiction; whereas, if a defendant is subject to general personal jurisdiction, the asserted cause(s) of action may be unrelated to the defendant's contacts with the forum." *Carnrick v. Riekes Container Corp.*, No. 15-cv-01899-CMA-KMT, 2016 WL 740998, at *2 (D. Colo. Feb. 24, 2016).

In its Response to Defendant's Motion, Plaintiff identifies five arguments to support personal jurisdiction over Defendant in Colorado: (1) Defendant committed an intentional tort on a Colorado citizen; (2) Defendant agreed to and adopted a business model focusing, in part, on Colorado; (3) Defendant is subject to a contract requiring performance in Colorado; (4) Defendant hosts an interactive website available to Colorado residents; and (5) Defendant is subject to personal jurisdiction because its predecessor corporation was subject to jurisdiction. [#24[2] at 13-22] The Court first addresses whether it has general jurisdiction over Defendant, then analyzes specific jurisdiction.

    **1.**    **General Jurisdiction**

A court obtains general personal jurisdiction "when a defendant is essentially at home in the State." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021) (quotations omitted). "With respect to a corporation the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation omitted). A corporation can also be subject to general jurisdiction if it has "continuous and systematic general business contacts with the forum State," which emulate "physical

---

[2] For consistency and clarity, the Court refers to the page number printed on each page of the .pdf document uploaded to the Electronic Court Filing system

6

presence in the state." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 614 (10th Cir. 2012) (quotations omitted).

Here, Plaintiff concedes in its Complaint that neither Defendant's place of incorporation nor principal place of business lies in Colorado. [#1 at ¶ 4] Defendant attests that it has not conducted business in Colorado; it does not derive income from business in Colorado; it does not contract for goods or services in Colorado; it does not own or lease any real property in Colorado; it does not employ anyone in Colorado; it does not hold a bank account in Colorado; and it does not pay tax to Colorado and, thus, it is not subject to personal jurisdiction by this Court. [#18-1 at ¶¶ 4-10] And the Complaint largely leaves absent facts sufficient to allege Defendant holds continuous and systemic business contacts in Colorado sufficient to render it "at home" in this forum. [*See generally* #1]

Indeed, the only argument that Plaintiff asserts in favor of general jurisdiction is its assertion that "[a] web site will subject a defendant to general personal jurisdiction when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum." [#24 at 19 (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011))] Plaintiff alleges that Defendant's website manifests this Court's personal jurisdiction over Defendant because it can be accessed by residents in Colorado. [*Id*. at 19-20] But an interactive website alone does not establish personal jurisdiction unless it facilitates substantial commercial interaction with forum residents. *See Job Store, Inc. v. Job Store of Loveland, OH., LLC*, No. 15-cv-02228-PAB-KLM, 2016 WL 9735786, at *5 (D. Colo. Sept. 7, 2016) ("[M]erely posting information on the internet does not, in

7

itself, subject the poster to personal jurisdiction wherever that information may be assessed." (citing *Shrader*, 633 F.3d at 1244)).  And "[a] website, even if interactive, is insufficient to create personal jurisdiction where that website has gone unused by residents of the forum state." *Boopy Co. v. Luvee Products Corp.*, No. 04-MK-320 (OES), 2004 WL 2608265, at *5 (D. Colo. May 25, 2004).

Here, Plaintiff alleges Defendant "marketed, advertised, and sold . . . goods and services *throughout the United States* using the Infringing Mark, through the Infringing Website and using other marketing methods."  [#1 at ¶ 25 (emphasis added)]  But Plaintiff neither alleges nor offers evidence that *Colorado residents* have specifically interacted with Defendant's website.  And in its Reply, Defendant offers evidence that "[n]o Colorado resident has ever set up an account on [Defendant's] website or made an inquiry through that website about training at [Defendant's] facility."  [#25-1 at ¶ 5] Because Plaintiff has failed to show that Defendant's website was actually accessed by Colorado residents, the Court cannot find personal jurisdiction.

Moreover, even if, arguendo, Plaintiff provided proof that Colorado residents accessed Defendant's website, it would still not establish personal jurisdiction in this case.  The Tenth Circuit has emphasized that the "maintenance of a website alone does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Old Republic*, 877 F.3d at 908 (quotation omitted).[3]  Instead, courts must consider "indications that a defendant deliberately directed its message at an audience in the

---

[3] *Old Republic* was addressing whether the operation of a website could create specific jurisdiction.  877 F.3d at 904-09.  But if the maintenance of a website accessible to

forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id*. (quotation omitted).

Plaintiff neither alleges nor provides evidence that Defendant deliberately directed its message to Colorado residents and intended harm to Plaintiff in Colorado. Plaintiff merely alleges that Defendant's website is "interactive and necessarily directed to residents in Colorado," and "[USA Gymnastics ('USAG')] Athletes, including those in Colorado can search, register and pay for AGC camps, classes and competitions on its websites," and because of the USAG regional affiliation, Defendant "should expect that Colorado residents will intentionally use and conduct transactions on its website." [#24 at 19-20]  Courts in this district have rejected similar arguments where the defendant's conduct, even if harmful to a forum resident, lacked express targeting of the forum. *See SEBO Am., LLC v. Azar*, No. 20-cv-03015-NYW, 2021 WL 720170, at *5 (D. Colo. 2021) (finding the court lacked personal jurisdiction over a seller of products allegedly infringing on a Colorado company's trademark because nothing in the record reflected that the seller sold any products to Colorado residents); *Onyx Enterprises Int'l Corp. v. Sloan Int'l Holdings Corp.*, No. 19-cv-2992-DDD-KLM, 2020 WL 1958414, at *4-6 (D. Colo. Mar. 26, 2020) (holding that the operation of a website and use of that website to make products available throughout the United States does not demonstrate any type of contact with Colorado specifically), *report and recommendation adopted*, 2020 WL 1955398 (D. Colo. Apr. 23, 2020).

---

residents of a forum state is insufficient to create specific jurisdiction in that forum state, it certainly does not create general jurisdiction in that forum state.

Thus, the Court finds that Plaintiff has failed to establish that Defendant has sufficient contacts with Colorado such that Colorado has general jurisdiction over Defendant.

### 2. Specific Jurisdiction

"Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co.*, 877 F.3d at 904 (quoting *Burger King*, 471 U.S. at 476-77). "[T]he 'minimum contacts' test for specific jurisdiction encompasses two distinct requirements: first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Shrader*, 633 F.3d at 1239 (quotation omitted). The Court addresses each of Plaintiff's arguments in favor of specific jurisdiction in turn.

#### a. Intentional Tort Allegations

Plaintiff first argues that Defendant committed an intentional tort—trademark infringement—that caused harm in Colorado. [#24 at 17]  Plaintiff alleges that Defendant's use of the "Active Gymnastics Center" Mark harms Plaintiff's reputation and dilutes its trademarks in Colorado, where Plaintiff is based.  [*Id.* at 5, 17]  Plaintiff concludes that since the trademark infringement was purposefully directed at Active Athletics in Colorado, Defendant has minimum contacts within the State, and thus is subject to this Court by specific personal jurisdiction.  [*Id.* at 17]

In determining personal jurisdiction for tort-based actions, courts apply a "purposeful direction" test. *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) Under that test, the court may exercise personal jurisdiction over a non-resident defendant where there is evidence of: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id*.; see also Ullom v. Doctors Collection Serv., Inc., No. 17-cv-0740-WJM-STV, 2018 WL 619755, at *3 (D. Colo. Jan. 30, 2018) ("A plaintiff must establish not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state." (quotation omitted)). The focus of this analysis is on "the relationship among the defendant, the forum, and the litigation," not the relationship between Plaintiff and Defendant. *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quotation and emphasis omitted). As the Supreme Court has explained:

> [M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Walden v. Fiore*, 571 U.S. 277, 290 (2014) Thus, in order for Plaintiff to successfully show that Defendant's alleged trademark infringement creates personal jurisdiction, Plaintiff must show that Defendant purposefully directed its conduct toward Colorado.

To show that Defendant purposefully directed its infringing actions toward Plaintiff and the state of Colorado, Plaintiff states that it sent Defendant a cease-and-desist letter describing the damage its use of "Active Gymnastics Center" was causing

Plaintiff's business and Defendant nonetheless continued its use. [#24 at 17] These assertions, however, are insufficient to create personal jurisdiction. Courts in this district have found that knowledge of purported harm and subsequent continued infringement are "not enough to satisfy the purposeful direction component in the absence of any indication that [defendant] sold [] products to Colorado consumers." *SEBO Am., LLC*, 2021 WL 720170, at *4; *see also Floyd's 99 Holdings, LLC v. Jude's Barbershop*, Inc., 898 F. Supp. 2d 1202, 1208–09 (D. Colo. 2012) ("[T]he out-of-state commission of trademark infringement alone—even with knowledge that the infringement would cause economic injury in Colorado—falls well short of contact 'expressly aimed' at the state."); *Impact Products., Inc. v. Impact Products., LLC*, 341 F. Supp. 2d 1186, 1191 (D. Colo. 2004) ("That [the defendant] may have infringed on [the plaintiff's] mark outside of Colorado, and did so knowing that [the plaintiff] was a Colorado resident and that this infringement would have effects in Colorado, is not sufficient to demonstrate 'express aiming' at this forum under the *Calder* test.").

Without proof of intentional action purposefully directed toward Colorado and evidence that Colorado residents engaged with Defendant's business, the Court cannot find specific personal jurisdiction over the trademark infringement claim simply because the disputed mark was used on the internet. "Plaintiff's argument asks the Court to adopt a per se rule finding nationwide personal jurisdiction in any case involving the use of a disputed mark on the internet. 'The creation of such de facto universal jurisdiction runs counter to the approach the [Supreme Court] has followed since *International Shoe*.'" *Job Store, Inc.*, 2016 WL 9735786, at *5 (quoting *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801-02 (7th Cir. 2014)).

### b.   Business Model focused on Colorado

Plaintiff next argues that because Defendant's gymnastics business "would necessarily have to focus on the states within the USAG Region 3, [including] Colorado," minimum contacts exist, which subject Defendant to personal jurisdiction. [#24 at 18]  Plaintiff claims that Defendant currently has athletes that compete at regional and out-of-state events. [*Id*. at 12]  Thus, according to Plaintiff, it is likely that Defendant will, in the future, "send high level athletes to compete in Colorado competitions." [*Id*. at 18]  Plaintiff thus concludes that these probable future contacts create specific personal jurisdiction. [*Id.*]

Plaintiff's argument relies on hypothetical future interactions by Defendant with Colorado, which is insufficient to establish jurisdiction. "Plaintiff must allege something more than mere foreseeable economic injury in the forum state to demonstrate that Defendant[ ] had sufficient minimum contacts, and that something more must be that Defendant[ ] undertook intentional actions that were expressly aimed at Colorado." *Floyd's*, 898 F. Supp. 2d at 1209 (quotation omitted); *see also Burger King*, 471 U.S. at 474 (holding the mere foreseeability of a non-forum resident causing injury in the forum state insufficient for the exercise of personal jurisdiction).  And as already established, the Court finds that Plaintiff has failed to show that Defendant purposefully directed its actions toward Colorado.  Thus, the hypothetical possibility that one of Defendant's athletes may participate in Colorado is insufficient to create personal jurisdiction over Defendant.

### c.  USAG Contract

Next, Plaintiff argues that Defendant's agreement with USAG creates a contact with Colorado because it: (1) requires Defendant to include events hosted at its facility on USAG's website, which is accessible to Colorado residents; (2) requires Defendant to allow Colorado athletes to participate in events held at Defendant's facility; and (3) requires Defendant to send qualifying athletes to Colorado competitions.  [#24 at 18-19]  The Court disagrees that the USAG contract creates the minimal contacts with Colorado required to establish personal jurisdiction over Defendant.

The Tenth Circuit has rejected the notion that a contract between an out-of-state party and a resident of the forum state constitutes sufficient minimum contacts for purposes of personal jurisdiction.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (citing *Burger King*, 471 U.S. at 473).  And here, Defendant's connection to Colorado through the USAG contract is even further removed.  Plaintiff does not assert that it has a contract with Defendant.  Rather, Plaintiff and Defendant each have separate contractual relationships with USAG.  [#24-1 at 7-10]  And the Terms and Conditions of those contractual relationships include a forum-selection clause setting Indiana (USAG's home state) as the jurisdiction in which disputes will be handled.  [*Id*. at 10]

Plaintiff nonetheless argues that the USAG agreement creates personal jurisdiction because the agreement requires Defendant to include events hosted at its facility on USAG's website, which is accessible to Colorado residents.  [#24 at 19]  But as discussed earlier, posting on a website that is accessible by residents of the forum state does not subject a party to personal jurisdiction.  *See Job Store, Inc.*, 2016 WL

14

9735786, at *5 (citing *Shrader*, 633 F.3d at 1244). As a result, the mere fact that the USAG agreement requires Defendant to include on its website events hosted at its facility does not create personal jurisdiction over Defendant.

Plaintiff also argues that the USAG agreement requires Defendant to allow Colorado athletes to compete at events held at Defendant's facility and requires Defendant to allow its own athletes to compete at events held in Colorado. [#24 at 19] But, again, Defendant has submitted evidence that no Colorado resident has ever trained at Defendant's facility, no Colorado resident has submitted an inquiry about training at Defendant's facility, and that Defendant has no plans of hosting a USAG event. [##24-3 at 5 (18:22-19:1); 25-1 at ¶¶ 4-5] And Plaintiff has not offered any allegations or evidence that one of Defendant's athletes has competed in Colorado, or any argument that such minimal contacts would be sufficient to create personal jurisdiction over Defendant. Thus, Plaintiff's speculation about hypothetical future interactions by Defendant with Colorado is insufficient to establish jurisdiction. *Floyd's*, 898 F. Supp. 2d at 1209 (explaining that plaintiff must allege "something more" than mere foreseeable economic injury in Colorado to demonstrate sufficient minimum contacts with the forum state); *Burger King*, 471 U.S. at 474 (holding that the mere foreseeability of a non-forum resident causing injury in the forum state is insufficient for the exercise of personal jurisdiction). Accordingly, Defendant's USAG agreement does not create personal jurisdiction over Defendant in Colorado.

### d. Successor Liability

Finally, Plaintiff argues that Defendant is subject to jurisdiction based on the minimum contacts of its predecessor, Silhouette Group, LLC, ("Silhouette Group"),

15

which Plaintiff alleges conducted business in Colorado before being acquired by Defendant. [#24 at 20-22] "Typically, a buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *United States v. Pioneer Nat. Res. Co.*, 309 F. Supp. 3d 923, 930-31 (D. Colo. 2018) (quotation omitted). And a "corporation that succeeds to the business of a partnership or single proprietorship may . . . be subject to long-arm jurisdiction for actions arising from the activity of the predecessor if the corporation assumed liability for the predecessor's obligations." *Inter-Americas Ins. Corp. v. Xycor Sys., Inc.*, 757 F. Supp. 1213, 1217 (D. Kan. 1991) (quotation omitted). But Plaintiff has not provided any evidence that Silhouette Group—as opposed to Defendant—infringed Plaintiff's trademarks, thereby subjecting Defendant to liability for Silhouette Group's actions. Nor has Plaintiff provided any evidence that Silhouette Group was subject to personal jurisdiction in Colorado. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) ("Under [the successor corporation liability] theory, a non-resident defendant corporation not otherwise subject to personal jurisdiction in the forum state becomes so *by virtue of its succeeding to a corporation that was subject to personal jurisdiction in the forum state*." (emphasis added)). Thus, Plaintiff's successor liability theory of personal jurisdiction fails.

    **B.**    **Dismissal or Transfer for Lack of Personal Jurisdiction**

As detailed above, Plaintiff has failed to establish jurisdiction over Defendant in Colorado. In its Response, Plaintiff argues, to the extent the Court finds that it lacks

personal jurisdiction over Defendant, the Court should transfer Plaintiff's claims against Defendant to the United States District Court for the Northern District of Texas. [#24 at 22] The Court agrees.

Pursuant to 28 U.S.C. § 1631, when a court determines that it lacks personal jurisdiction, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action or appeal could have been brought." Although Section 1631 "contain[s] the word 'shall,' [the Tenth Circuit] ha[s] interpreted the phrase 'if it is in the interest of justice' to grant the district court discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo*, 465 F.3d at 1222-23. "Factors considered in deciding whether a transfer is in the interest of justice include [1] whether the claims would be time barred if filed anew in the proper forum, [2] whether the claims alleged are likely to have merit, and [3] whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction." *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008). "[W]here the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, '[t]he correct course . . . [is] to transfer the action pursuant to [§ 1631].'" *Trujillo*, 465 F.3d at 1223 (quoting *Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987)). Weighing these factors, the Court concludes that the matter should be transferred to the Northern District of Texas.

First, the "Lanham Act . . . contains no statute of limitations, and expressly provides for defensive use of . . . laches." *Yeager v. Fort Knox Security Products*, 602 F. App'x 423, 431 (10th Cir. 2015) (alterations in original). Courts thus apply analogous state statute of limitation provisions and "invoke[] presumptions in favor of (or against)

17

laches defenses to claims brought outside (or inside) the analogous limitations period." *Id*. Because Plaintiff does not address the statute of limitations here, and because the other factors weigh in favor of transfer even if Plaintiff's claims would not be time-barred, the Court need not determine the relevant statute of limitations period, or decide the proper weight to give to a laches defense.

Second, with respect to whether the claims are likely to have merit, "a court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)). Plaintiff asserts claims of trademark infringement, false designation of origin, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125. [#1 at ¶¶ 22-51] To establish these claims, a plaintiff must prove that: (1) the mark is protectable; (2) the defendant used the mark in connection with commercial use; and (3) the defendant's use of the mark is likely to cause confusion or mistake. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013). Plaintiff has made credible allegations with respect to each of these elements. [#1 at ¶ 1 (alleging Plaintiff owns the registered trademark "ACTIVE ATHLETICS" and has pending ownership of the trademark "ACTIVE GYMNASTICS"); *id*. at ¶¶ 15-21 (alleging that Defendant is using Plaintiff's trademark without consent); *id*. at ¶ 18 (alleging that Defendant's use of the trademark is likely to cause confusion as to the affiliation, connection, or association of Defendant with Plaintiff; or as to the origin, sponsorship, or approval by Plaintiff of

Defendant's goods, services, or activities.)] Thus, the fact that Plaintiff's claims alleged are likely to have merit supports transfer.

Finally, as to the third factor, the Court concludes that Plaintiff's claims were filed in good faith. And, while the Court concludes that it lacks jurisdiction over Defendant, this conclusion was not so clear at the time of the filing of the Complaint as to warrant dismissal as opposed to transfer.

Accordingly, the Court finds that the interests of justice in this case require transfer to the appropriate court rather than dismissal.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over Defendant. Nonetheless, the Court **DENIES** Defendant's Motion to Dismiss [#18] to the extent it seeks to dismiss the case and, instead, **DIRECTS** the Clerk of Court, pursuant to 28 U.S.C. § 1631, to transfer this case to the United States District Court for the Northern District of Texas.

DATED:  December 20, 2024                               BY THE COURT:

                                                                                s/Scott T. Varholak
                                                                                United States Magistrate Judge